IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF WEST VIRGINIA

**WHEELING DIVISION**

> ELECTRONICALLY
> FILED
> 09/29/2023
> U.S. DISTRICT COURT
> Northern District of WV

**WILLIAMS OHIO VALLEY MIDSTREAM, LLC,**
**a foreign company,**

    **Plaintiff,**

v.                               CIVIL ACTION NO. **5:23-CV-310 (Bailey)**
_____

**PHILLIP A. KITTLE and**
**DEBORAH K. KITTLE,**
**West Virginia residents,**

    **Defendants.**

## <u>VERIFIED COMPLAINT</u>

For its Complaint seeking monetary damages and injunctive relief, Williams Ohio Valley Midstream, LLC ("WOVM"), by counsel, states as follows:

1.    Defendants Phillip A. Kittle and Deborah K. Kittle (the "Kittles") have materially breached a right-of-way/easement agreement with WOVM by physically blocking access to certain areas where WOVM is authorized to perform oil and gas pipeline-related activities. The Kittles have also verbally harassed WOVM representatives working in the area, including making threats of pursuing criminal prosecution, to prevent WOVM from engaging in activities authorized by the right-of-way/easement agreement at issue. WOVM requests an order from the Court enjoining the Kittles from obstructing WOVM's access to the areas governed by the agreement and harassing WOVM representatives. WOVM also requests an award of monetary damages to compensate WOVM for the Kittles' breach of the agreement.

(15334932)

2.      WOVM is a Texas limited liability company that has a single member – Ohio Valley Midstream, LLC.

3.      Ohio Valley Midstream, LLC has three members: (1) Williams Ohio River Valley Corporation, a Delaware corporation, (2) Williams Ohio River Valley LLC, a Delaware LLC, and (3) CPPIB Appalachia Midstream Holdings U.S., Inc., a Delaware corporation.

4.      Williams Ohio River Valley LLC has a single member – Williams MLP Operating LLC, a Delaware LLC.

5.      Williams MLP Operating LLC has a single member: Williams Field Services Group, LLC, a Delaware LLC.

6.      Williams Field Services Group, LLC has a single member: The Williams Companies, Inc. a Delaware corporation.

7.      The high level officers who direct, control, and coordinate the activities of all the entities described above are located in Tulsa, Oklahoma.

8.      WOVM operates in the "midstream" segment of the oil and gas industry, which includes activities such as processing, storing, and transporting natural gas between the production at the well pad ("upstream") and use of the natural gas or its components by manufacturers or other end-users ("downstream").  WOVM owns and operates facilities and pipelines that transport, process, and store natural gas produced by others, and it is authorized to conduct business in the State of West Virginia.

9.      WOVM is engaged in, among other things, the operation and maintenance of natural gas pipelines, including natural gas pipelines in Marshall County, West Virginia.

10.     On or about February 18th, 2010, Caiman Eastern Midstream, LLC ("Caiman Eastern"), entered into a Pipeline Right of Way Agreement (the "2010 Right of Way Agreement")

with Defendants Phillip A. Kittle and Deborah K. Kittle, which provided Caiman Eastern with the right to, among other things, enter upon the Kittles' property "to lay, operate, maintain, repair, replace, and remove pipelines," including the "right to make connections thereto, change the size of, re-lay such pipelines, and/or lay additional pipelines at any time . . . ."  See Exhibit A ("2010 Right of Way Agreement").

11.    The Kittles' property subject to the 2010 Right of Way Agreement is located in Marshall County, West Virginia, and identified as situated in Webster District, with Tax Map and Parcel Numbers 15-15-35, 15-15-33, 15-15-32, and 15-15-25.

12.    The specific area governed by the 2010 Right of Way Agreement is located in the western and northern portions of the Kittle's property.

13.    A subsidiary of The Williams Companies, Inc. acquired the membership interests in Caiman Eastern on April 30, 2012, and changed its name to WOVM; hence, WOVM is a successor to Caiman Eastern under the express terms of the 2010 Right of Way Agreement.

14.    WOVM has installed and presently operates a 4-inch pipeline and 12-inch natural gas pipeline within the area governed by the 2010 Right of Way Agreement.

15.    WOVM and the Kittles also entered into a Pipeline Easement and Right of Way Agreement dated September 10, 2013 ("2013 Right of Way Agreement"), by which WOVM acquired a "perpetual right of way and easement to lay, survey, construct, test, maintain, inspect, operate, renew, alter, improve, protect, repair, replace, change cathodic construction, and other necessary appurtenances, along with ingress and egress thereto . . . together with all necessary or convenient rights, equipment and appurtenances thereto, over, upon and across the lands of the [Kittles] lying, [sic] in Webster District, Marshall County, West Virginia . . . ."  See Exhibit B (2013 Right of Way Agreement).

3

16.    The specific area governed by the 2013 Right of Way Agreement is located in the northeastern portion of the Kittles' property.

17.    WOVM has installed and presently operates a 24-inch natural gas pipeline within the area governed by the 2013 Right of Way Agreement.

18.    WOVM received notice that Marshall County Coal Company would conduct longwall coal mining operations beneath the Kittles' property starting on or about the week of October 23, 2023.  Upon information and belief, this coal mining is taking place pursuant to a grant of rights to mine the coal by the Kittles or their predecessors.  Longwall coal mining operations involve the complete removal of coal deposits without retaining subsurface support for the formations overlying the void left behind.  As a result, the "roof" of the mine collapses as the mining progresses.  This roof collapse often causes subsidence to occur, which is a shifting of the surface and the near-surface soils as a result of the underlying geologic strata falling into the void created by the coal removal.

19.    In the absence of proper maintenance and other preparatory activities, subsidence from longwall mining operations presents a substantial hazard to oil and gas pipelines at or near the surface.  The subsidence can cause the pipelines to leak or even rupture, in addition to other physical damage due to the shifting of the soil.

20.    To maintain its pipelines and mitigate potential effects upon the pipelines from the anticipated subsidence, WOVM began efforts to remove all soil on top of and around the pipelines and placing that soil temporarily on the right of way that is contained in the 2010 Right of Way Agreement, to stabilize the pipelines, and to install devices to monitor stress imposed on the pipelines as a result of ground movement caused by the underground longwall mining operations.  These actions are necessary to help maintain the integrity of the pipeline when subsidence occurs

in the vicinity of the pipeline, and also to provide ready access to the pipeline in the event of a leak or rupture caused by subsidence.

21.    WOVM's maintenance and mitigation activities are only necessary because of the longwall coal mining activities taking place pursuant to the Kittles' (or their predecessors') grant of rights to mine that coal to a third-party.  Moreover, time is of the essence because WOVM needs immediate access to the Kittles' property to conduct its maintenance and mitigation activities before the longwall coal mining operations reach the Kittles' property.

22.    2010 The Right of Way Agreement contains a single right of way easement that is divided into two (2) parts.

23.    The "First Easement" in the 2010 Right of Way Agreement is for the installation of one twelve-inch pipeline and one-four-inch pipeline to be laid within a 30-foot-wide permanent easement on the Kittles' property.  The "location of the First Easement will be generally abutted to the [Kittles'] property line insofar as it is practical to do so for construction purposes . . . ." Exhibit A.  WOVM installed a 12-inch pipeline and a 4-inch pipeline on the First Easement.

24.    The "Second Easement" in the 2010 Right of Way Agreement is for the "future installation of two (2) additional pipelines of undetermined diameter" within a thirty-foot-wide permanent easement.  Exhibit A.  WOVM installed a four-inch and six-inch pipeline on the Second Easement that, until last year, were connected to the pipelines on the First Easement.

25.    The pipelines on the First Easement and Second Easement are connected and part of the same operating system maintained and operated by WOVM.

26.    In addition to the permanent 30-foot easements, the 2010 Right of Way Agreement states that, "[d]uring temporary periods, [WOVM] shall have the right to use up to twenty additional feet along and adjacent to said right of way in connection with construction,

maintenance, repair, removal, replacement, and/or any other right granted herein, the location of which shall be in the discretion of [WOVM]."  Exhibit A.

27.     The 2010 Right of Way Agreement also provides for a right of ingress and egress to the right of way:  "[WOVM] shall have the right of ingress and egress to and from said pipeline right of way over and across" the Kittles' property "for enjoyment and utilization of each and all of said rights granted herein."  Exhibit A (Right of Ingress/Egress).

28.     Finally, the 2010 Right of Way Agreement states that the "[Kittles] shall not inhibit or otherwise interfere with [WOVM] in the exercise of any of it [sic] rights here in granted." Exhibit A (Use of Premises/Duty to Repair).

29.     On September 8, 2023, WOVM verbally notified the Kittles that it intended to enter the Kittles' property on or about September 14, 2023, to begin its maintenance work in preparation for its mitigation efforts before the longwall coal mining operations begin under the Kittles' property.

30.     +On or about September 14, 2023, WOVM began its maintenance and mitigation activities on the Kittles' property.

31.     All the work performed by WOVM is located within the fifty-foot-wide easement provided under the 2010 Right of Way Agreement.

32.     The work being performed by WOVM on the easement includes the removal of soil on top of and around the pipelines in place and temporarily storing that soil on the easement under the 2010 Right of Way Agreement.

33.     WOVM's maintenance and mitigation work on the pipelines in place, including potential repair work, will be completed after the active longwall coal mining operations are no longer under the Kittles' property, which upon information and belief will be in the Spring of 2024.

6

At that time, WOVM anticipates returning the soil being temporarily stored on the right of way back on top of the pipelines in place.

34.    On September 25, 2023, a male identifying himself as the Kittles' counsel was on the Kittles' property and threatened the workers performing the maintenance and mitigation work for WOVM that the Kittles would file criminal charges if they performed any further work within the right of way.

35.    On the morning of September 26, 2023, the workers arrived at the Kittles' property to continue their maintenance and mitigation work and discovered that their access to a portion of WOVM's right of way under the 2010 Right of Way Agreement had been blocked.

36.    Specifically, upon information and belief, the Kittles placed a tractor and a trailer in the right of way that blocked the ingress and egress of the workers performing WOVM's maintenance and mitigation work, as shown in Figure 1.

37.    As a result, WOVM cannot access its right of way under the 2010 Right of Way Agreement to perform the critical maintenance and mitigation activities necessary to prepare for the longwall coal mining operations that will take place beneath the Kittles' property.

38.    The Kittles have interfered with and obstructed WOVM's maintenance and mitigation activities on the Subject Property and have, to date, refused to allow WOVM access to its right of way on the Kittles' property.



*Figure 1*

39.     WOVM is also performing the same type of maintenance and mitigation activities on its pipeline located within its right of way in the northeastern portion of the Kittles' property that is governed by the 2013 Right of Way Agreement.

40.     Based on the Kittles' conduct with respect to the area governed by the 2010 Right of Way Agreement, WOVM anticipates that the Kittles may engage in the same obstructionist activity with respect to work in the area governed by the 2013 Right of Way Agreement.

**Jurisdiction**

41.    28 U.S.C. § 1332(a) provides that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between . . . citizens of different States." 28 U.S.C. § 1332(a).

42.    As detailed below, the Civil Action satisfies the jurisdictional amount in controversy because the value of the object of the litigation – WVOM's pipelines and potential adverse impacts on public health, safety, and the environment – far exceeds $75,000.

43.    District courts have "original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interests and costs, and is between – citizens of different States[.]" 28 U.S.C. § 1332.

44.    Defendants are individuals who reside in and own the subject real property located in Marshall County, West Virginia.  Defendants are therefore citizens of West Virginia for purposes of diversity.

45.    For purposes of diversity jurisdiction, the citizenship of a limited liability company is determined by the citizenship of all its members. *Cent. W.Va. Energy Co. v. Mt. State Carbon, LLC*, 636 F.3d 101, 103 (4th Cir. 2011).

46.    A corporation is a citizen of both the state where it is incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c).

47.    The phrase "principal place of business" refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities." *Central West Virginia Energy Co. v. Mountain State Carbon, LLC*, 636 F.3d 101, 102 (4th Cir. 2011).

48.    In light of the organizational structure discussed above, WOVM is considered a citizen of Texas, Delaware, and Oklahoma for purposes of diversity jurisdiction.

49.     Since WOVM and Defendants are citizens of different states, diversity of citizenship exists.

50.     The amount in controversy for purposes of diversity jurisdiction "is measured by the value of the object of the litigation." *McCoy v. Erie Ins. Co.*, 147 F. Supp. 2d 481, 492 (S.D. W. Va. 2001) (quoting *Hunt v. Washington State Apple Advertising Comm'n*, 432 U.S. 333, 347 (1977)).

51.     A court may consider the entire record and make an independent evaluation of whether the amount in controversy has been satisfied. *See Weddington v. Ford Motor Credit Co.*, 59 F. Supp. 2d 578, 584 (S.D. W. Va. 1999).  This includes declarations and other evidentiary materials that a defendant may submit. *See*, *e.g. McCoy*, 147 F. Supp. 2d at 493 ("It is appropriate to consider the affidavit under existing District precedent.") (citing *White v. J.C. Penney Life Ins. Co.*, 861 F. Supp. 25, 27 (S.D. W. Va. 1994)).

52.     In making the assessment of the value of the object of the litigation, the Fourth Circuit employs the "either viewpoint" rule — that is, that the value of the object of the litigation may be the value to either the plaintiff or the defendant. *See Dixon v. Edwards*, 290 F.3d 699, 710 (4th Cir. 2002) ("the test for determining the amount in controversy in a diversity proceeding is 'the pecuniary result to either party which judgment would produce.'") (quoting *Gov. Empl. Ins. Co. v. Lally*, 327 F.2d 568, 569 (4th Cir. 1964)); *see also*, *McCoy*, 147 F. Supp. 2d at 493 (applying the either viewpoint rule).

53.     The object of this Civil Action is the operational safety of oil and natural gas pipelines located on Defendants' property.  As described above, WOVM needs access to the pipelines before longwall mining operations reach the pipelines, which could occur within the next days.  If WOVM is unable to timely gain access and perform the necessary maintenance activities,

the pipelines could leak or rupture in multiple locations due to subsidence.  A leak or rupture could create a serious hazard to public health and safety and the environment in the form of an explosion, fire, and release of petroleum products into the environment.  The monetary cost of such an event would exceed $75,000.

## COUNT ONE: BREACH OF CONTRACT

54.    WOVM restates and incorporates the allegations above as if fully set forth herein.

55.    The 2010 Right of Way Agreement is an enforceable contract.

56.    WOVM has materially performed its obligations under the 2010 Right of Way Agreement.

57.    Pursuant to the 2010 Right of Way Agreement, the Kittles granted WOVM rights to access and perform pipeline-related maintenance and mitigation activities in the areas governed by that agreement.

58.    By obstructing access to areas governed by the 2010 Right of Way Agreement and harassing WOVM representatives, the Kittles have breached the 2010 Right of Way Agreement.

59.    WOVM has been damaged by the Kittles' breach of the 2010 Right of Way Agreement by being denied access to perform pipeline-related maintenance and mitigation activities in the areas governed by that agreement, including, but not limited to, the delay damages of approximately $12,000 per day starting on September 26, 2023.

## COUNT TWO: PRELIMINARY INJUNCTION

60.    WOVM restates and incorporates the allegations above as if fully set forth herein.

61.    A court may issue a preliminary injunction upon a showing of "a reasonable likelihood of the presence of irreparable harm; the absence of any other appropriate remedy at law; and the necessity of a balancing of hardship test including: (1) the likelihood of irreparable harm

11

to the plaintiff without the injunction; (2) the likelihood of harm to the defendant with an injunction; (3) the plaintiff's likelihood of success on the merits; and (4) the public interest." *Ne. Nat. Energy LLC v. Pachira Energy LLC*, 243 W. Va. 362, 366, 844 S.E.2d 133, 137 (2020) (quoting *State ex rel. McGraw v. Imperial Mktg.*, 196 W. Va. 346, 352 n.8, 472 S.E.2d 792, 798 n.8 (1996)).

62.     The Defendants have interfered with, delayed, and otherwise prevented WOVM from use of its property rights pursuant to the 2010 Right of Way Agreement.  Time is of the essence, and unless WOVM immediately gains access to the right of way, WOVM will be unable to complete its maintenance and mitigation work before the longwall coal mining operations begin beneath the Kittles' property.  The obstruction of WOVM's maintenance and mitigation work will irreparably harm WOVM's ability to properly maintain and mitigate against damage to its pipelines from the longwall coal mining operations that will take place beneath the Kittles' property, which in turn creates a public and environmental safety risk and impacts WOVM's ability to provide natural gas service.  Interference with WOVM's rights under the 2013 Right of Way Agreement will cause the same irreparable harm.

63.     The Defendants have no legal right to interfere with the right of way that they granted to WOVM under the 2010 Right of Way Agreement or the 2013 Right of Way Agreement. Their interference, including blocking ingress and egress to a portion of the right of way, also presents a safety risk to WOVM and its employees and contractors working on Kittles' property and, potentially, to the miners working underground.  The Defendants will not be harmed in any way by the grant of a preliminary injunction.

64.     As set forth in this Complaint, WOVM is likely to succeed on the merits of this action.

65.     Finally, it should be obvious that ensuring the maintenance and mitigation of underground natural pipelines from slippage or other damages from longwall coal mining operations underneath those pipelines serves the public interest by reducing the risk of leaking or ruptured pipelines.

66.     Without a preliminary injunction, WOVM will be irreparably harmed in a way that is not correctable solely with monetary damages, and pursuant to West Virginia law, an injunction is an appropriate remedy to protect a legal property right and preclude interference with valid property rights.

67.     The balance of the equities is in WOVM's favor.  Defendants' actions and their failure to allow access to WOVM's right of way will cause substantial damage to WOVM.

68.     Finally, an injunction is in the public interest.

69.     A preliminary injunction is therefore necessary to preserve the status quo pending resolution of this action.

## COUNT THREE: PERMANENT INJUNCTION

70.     WOVM restates and incorporates the allegations above as if fully set forth herein.

71.     The West Virginia Supreme Court has held that "[the] granting or refusal of an injunction, whether mandatory or preventative, calls for the exercise of sound judicial discretion in view of all the circumstances of the particular case; regard being had to the nature of the controversy, the object for which the injunction is being sought, and the comparative hardship or convenience to the respective parties involved in the award of denial of the writ." Syl. Pt. 2, *Hart v. Nat'l Collegiate Athletic Ass'n*, 209 W. Va. 543, 545, 550 S.E.2d 79, 81 (2001).

72.    "According to well-established principles of equity, a plaintiff seeking a permanent injunction must satisfy a four-factor test before a court may grant such relief.  A plaintiff must demonstrate: (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay, Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *Cantley v. W. Va. Reg'l Jail & Corr. Facility Auth.*, 771 F.3d 201, 207 (4th Cir. 2014).

73.    The allegations set forth above also establish the factors set forth in *eBay, Inc. v. MercExchange, L.L.C.* for permanent injunctive relief.

## COUNT FOUR: DAMAGES CAUSE BY DELAY OF CONSTRUCTION

74.    Defendants' interference with WOVM's access to its right of way has caused, and will cause, WOVM to delay its maintenance and mitigation activities.

75.    This delay amounts to $12,000 in salaries and wages, equipment rental, and other expenses incurred daily by WOVM.

76.    Defendants refused to allow access to WOVM's right of way starting on September 26, 2023.

77.    As such, Defendants have caused damage to WOVM through delay of its maintenance and mitigation work in the amount of $24,000 as of the date of the filing of this Complaint, which damages continue to accumulate daily.

**WHEREFORE**, for the foregoing reasons, WOVM hereby complains, petitions, and requests the entry of an immediate order (1) enjoining Defendants from blocking access to, or otherwise performing any activities that may interfere with or obstruct WOVM's use or

maintenance and mitigation activities on the right of way provided under either the 2010 Right of Way Agreement or the 2013 Right of Way Agreement; (2) enjoining Defendants from engaging in any act that would interfere with WOVM's safe operation and/or maintenance and/or repair of pipelines within the right of way under the 2010 Right of Way Agreement or the 2013 Right of Way Agreement, (3) enjoining Defendants from obstructing in any way WOVM's ability to conduct its business; (4) enjoining Defendants from inciting, encouraging and/or assisting others from engaging in any act or activity from which they are prohibited; (5) imposing judgment against the Defendants in an amount that will compensate WOVM for damages incurred by Defendants' conduct, including pre- and post-judgment interest; and (6) awarding such other and further relief as the Court may deem appropriate.

**WILLIAMS OHIO VALLEY MIDSTREAM, LLC**

**By Counsel**

*/s/ Mychal S. Schulz*
Mychal S. Schulz (WVSB #6092)
Robert M. Stonestreet (WVSB #9370)
Babst Calland, P.C.
300 Summers Street, Suite 1000
Charleston, WV  25301
Telephone:  681.205.8888
Facsimile:  681.205.8814
mschulz@babstcalland.com
rstonestreet@babstcalland.com

## **VERIFICATION**

The undersigned, after being duly sworn, hereby deposes and says that they have read the allegations of the foregoing Verified Complaint and the accompanying Motion for Preliminary Injunction, and the factual allegations therein are true and correct to the best of their information, knowledge and belief.

_____
MARK ROBERTS ON BEHALF OF WILLIAMS OHIO VALLEY MIDSTREAM, LLC.

Subscribed and sworn to me this _____ day of _____, 2023.

_____
Notary Public

My commission expires: _____.